1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
2
   - - - - - - - - - - - - - - - x
3  THE UNITED STATES OF AMERICA,
                                  Criminal Action No.
4              Plaintiff,         1:21-cr-00226-CRC-1
                                  Tuesday, August 23, 2022
5  vs.                           2:00 p.m.

6  CHRISTOPHER PATRICK MOYNIHAN,

7              Defendant.
   - - - - - - - - - - - - - - - x
8

9  _____

10            TRANSCRIPT OF STIPULATED BENCH TRIAL
       HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                 UNITED STATES DISTRICT JUDGE
   _____

12 APPEARANCES:

13

14 For the United States:    **JAMES DENNIS PETERSON, ESQ.**
                            **DOJ-CRM**
15                          1331 F Street, 6th Floor
                            Washington, DC 20530
16                          (202) 353-0796
                            james.d.peterson@usdoj.gov

17

18 For the Defendant:       **EDWARD SMOCK, ESQ.**
                            **FEDERAL PUBLIC DEFENDER FOR D.C.**
19                          625 Indiana Avenue, NW
                            Suite 550
20                          Washington, DC 20004
                            (202) 208-7500
21                          ned_smock@fd.org

22 Court Reporter:          Lisa A. Moreira, RDR, CRR
                            Official Court Reporter
23                          U.S. Courthouse, Room 6718
                            333 Constitution Avenue, NW
24                          Washington, DC  20001
                            (202) 354-3187

25

```
1                    P R O C E E D I N G S
2            THE COURTROOM DEPUTY:  Your Honor, we're on the
3    record for Criminal Case 21-226, United States of America
4    vs. Christopher Patrick Moynihan.
5            Counsel, please approach the lectern and identify
6    yourselves for the record.
7            MR. PETERSON:  Good afternoon, Your Honor; for the
8    United States, James Peterson.  Thank you.
9            THE COURT:  Good afternoon, Mr. Peterson.
10           MR. SMOCK:  Good afternoon, Your Honor; Ned Smock
11   with Mr. Moynihan.
12           THE COURT:  Good afternoon, Mr. Smock.
13           Mr. Moynihan, how are you?
14           THE DEFENDANT:  Good, Your Honor.
15           THE COURT:  All right.  Are we ready to proceed?
16           MR. PETERSON:  Yes.
17           THE COURT:  All right.  What I thought we would do
18   is put the defendant under oath first and then proceed with
19   a competency colloquy with respect to both aspects of the
20   hearing this afternoon, then go to the bench trial --
21   stipulated bench trial portion of the hearing, obtain the
22   waiver of jury trial, confirm that he's waived jury on Count
23   1, have the government read the statement of stipulated
24   facts and the elements, and make sure that the defendant
25   adopts those and understands them.
```

```
1              If he does, I will then enter the conviction on
2       Count 1.  Then we'll move to the plea portion on Counts 2
3       through 5, and we'll go through the standard colloquy.
4              He's pleading to the indictment; is that correct,
5       Mr. Smock?
6              MR. SMOCK:  That's correct.
7              THE COURT:  Okay.  And that is in order to
8       preserve the right to appeal the Court's sentence, or is
9       there some other reason we're doing this by -- through the
10      indictment and not by a plea agreement?
11             MR. SMOCK:  Your Honor, it's to preserve the right
12      to appeal both the Count 1 issue and then also any potential
13      enhancements under the sentencing guidelines as well.
14             THE COURT:  Okay.  So it's the sentencing issue.
15      I mean, you'll retain the right to appeal Count 1 by virtue
16      of the bench trial, or you'll retain the right to appeal the
17      Court's denial of your motion to dismiss Count 1 --
18             MR. SMOCK:  Correct.
19             THE COURT:  -- because of the bench trial.
20             All right.  Why don't you approach with your
21      client.
22             Mr. Moynihan, please raise your right hand and be
23      sworn in by the courtroom deputy.
24             (Defendant sworn)
25             THE COURT:  Okay.  And you both should feel free
```

1    to slip your masks off, if you're comfortable doing so, if

2    you're addressing the Court.

3          Mr. Moynihan, as I've just explained, your counsel

4    has requested an opportunity to have what's called a

5    stipulated bench trial with respect to Count 1, which means

6    a trial before the Court based on stipulated facts, not a

7    trial before a jury.  In order for me to do that, I need to

8    have you waive your right to a jury trial.

9          I've been presented with a three-page document

10   called "Agreement and Waiver of Jury Trial Rights."  Do you

11   recognize that document?

12         THE DEFENDANT:  I do, Your Honor.

13         THE COURT:  Did you review it with Mr. Smock?

14         THE DEFENDANT:  I did, Your Honor.

15         THE COURT:  And is that your signature reflected

16   on Page 3?

17         THE DEFENDANT:  It is, Your Honor.

18         THE COURT:  And do you understand that had we gone

19   to a trial by jury you would have the opportunity to be

20   represented; your lawyer would have been able to call

21   witnesses on your behalf, cross-examine the government's

22   witnesses; and a jury of 12 people would decide the case?

23   But by going through this process, a bench trial, you would

24   be waiving those things.  Do you agree to that?

25         THE DEFENDANT:  I do.  Yes, I do, Your Honor.

```
1              THE COURT:  Okay.  Very well.

2              All right.  You can have a seat.

3              Mr. Peterson, why don't you read the statement of

4    facts for stipulated trial into the record.

5              MR. PETERSON:  Thank you, Your Honor.  May it

6    please the Court.  I'll also start with the elements, and I

7    will go -- unless the Court wants me to abbreviate it, I

8    will go through all the elements of all the counts.  I

9    understand we're having a guilty plea colloquy after this.

10             THE COURT:  Yes, so just -- this is just with

11   respect to Count 1.

12             MR. PETERSON:  Okay.

13             THE COURT:  We'll redo this process with respect

14   to Counts 2 through 5 in a minute.

15             MR. PETERSON:  Thank you, Your Honor.

16             The essential elements of the offense of

17   obstruction of an official proceeding and aiding and

18   abetting in violation of 18 United States Code Section

19   1512(c)(2), each of which the government must prove beyond a

20   reasonable doubt, are:

21             One, the defendant attempted to or did obstruct or

22   impede an official proceeding;

23             Two, the defendant intended to obstruct or impede

24   the official proceeding;

25             Three, the defendant acted knowingly, with
```

1    awareness that the natural and probable effect of his

2    conduct would be to obstruct or impede the official

3    proceeding;

4            And, four, the defendant acted corruptly.

5            The government further alleges that the defendant

6    aided and abetted others in committing obstruction of an

7    official proceeding.

8            To satisfy its burden of proof in proving that the

9    defendant aided and abetted others in committing this

10    offense, the government must prove the following beyond a

11    reasonable doubt:

12            One, others committed obstruction of an official

13    proceeding by committing each of the elements of the offense

14    charged;

15            Two, the defendant knew that obstruction of an

16    official proceeding was going to be committed or was being

17    committed by others;

18            Three, the defendant performed an act or acts in

19    furtherance of the offense;

20            Four, the defendant knowingly performed that act

21    or acts for the purpose of aiding, assisting, soliciting,

22    facilitating, or encouraging others in committing the

23    offense of obstruction of an official proceeding;

24            And five, the defendant did that act or acts with

25    the intent that others commit the offense of an obstruction

1    of an official proceeding.

2              The term "official proceeding" includes

3    proceedings before Congress.

4              Skip 2 -- Count 2, Count 3, Count 4, and Count 5.

5              THE COURT:  Okay.  Why don't we stop there.

6              Mr. Moynihan, you just heard Mr. Peterson recite

7    the elements of Count 1; in other words, the things that the

8    government would have to prove in order to obtain a

9    conviction before a jury.  Do you understand the elements of

10   both obstructing an official proceeding and aiding and

11   abetting others in obstructing an official proceeding?

12             THE DEFENDANT:  I do, Your Honor.

13             THE COURT:  Okay.  Please proceed, Mr. Peterson.

14             MR. PETERSON:  Thank you, Your Honor.  May it

15   please the Court.

16             If the case proceeded to trial, the defendant

17   agrees the government would have elicited the following

18   evidence:

19             The attack at the U.S. Capitol on January 6, 2021.

20             One, the U.S. Capitol, which is located at First

21   Street, Southeast, in Washington, D.C., is secured 24 hours

22   a day by U.S. Capitol Police.  Restrictions around the U.S.

23   Capitol include permanent and temporary security barriers

24   and posts manned by the U.S. Capitol Police.  Only

25   authorized people with appropriate identification are

1    allowed access inside the U.S. Capitol.

2            On January 6, 2021, the exterior plaza of the U.S.

3    Capitol was closed to members of the public.

4            On January 6, 2021, a joint session of the United

5    States Congress convened at the United States Capitol, which

6    is located at First Street, Southeast, in Washington, D.C.

7    During the joint session, elected members of the United

8    States House of Representatives and United States Senate

9    were meeting in separate chambers of the United States

10   Capitol to certify the vote count of the Electoral College

11   of the 2020 Presidential Election, which had taken place on

12   November 3, 2020.  The joint session began at approximately

13   1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m.,

14   the House and Senate adjourned to separate chambers to

15   resolve a particular objection.  Vice President Mike Pence

16   was present and presiding, first in the joint session, and

17   then in the Senate Chamber.

18           As the proceedings continued in both the House and

19   Senate, and with Vice President Pence present and presiding

20   over the Senate, a large crowd gathered outside the U.S.

21   Capitol.  As noted above, temporary and permanent barricades

22   were in place around the exterior of the U.S. Capitol

23   building, and U.S. Capitol Police were present and

24   attempting to keep the crowd away from the Capitol building

25   and the proceedings underway inside.

1          At approximately 2:00 p.m., certain individuals in

2     the crowd forced their way through, up, and over the

3     barricades and officers of the U.S. Capitol Police, and the

4     crowd advanced to the exterior facade of the building.  The

5     crowd was not lawfully authorized to enter and remain in the

6     building and, prior to entering the building, no members of

7     the crowd submitted to security screenings or weapons checks

8     by U.S. Capitol Police or to other authorized security

9     officials.

10          At such time the certification proceedings were

11     still underway, and the exterior doors and windows of the

12     U.S. Capitol were locked or otherwise secured.  Members of

13     the U.S. Capitol Police attempted to maintain order and keep

14     the crowd from entering the Capitol; however, shortly after

15     2:00 p.m. individuals in the crowd forced entry into the

16     U.S. Capitol, including by breaking windows and by

17     assaulting members of law enforcement, as others in the

18     crowd encouraged and assisted those acts.  The riot resulted

19     in substantial damage to the U.S. Capitol, requiring the

20     expenditure of more than $2.7 million for repairs.

21          Shortly thereafter, at approximately 2:20 p.m.,

22     members of the United States House of Representatives and

23     United States Senate, including the president of the Senate,

24     Vice President Pence, were instructed to and did evacuate

25     the chambers.  Accordingly, all proceedings of the United

1    States Congress, including the joint session, were

2    effectively suspended until shortly after 8:00 p.m. the same

3    day.   In light of the dangerous circumstances caused by the

4    unlawful entry into the U.S. Capitol, including the danger

5    posed by individuals who had entered the U.S. Capitol

6    without any security screening or weapons check,

7    congressional proceedings could not resume until after every

8    unauthorized occupant had left the U.S. Capitol and the

9    building had been confirmed secured.   The proceedings

10   resumed at approximately 8:00 p.m. after the building had

11   been secured.   Vice President Pence remained in the United

12   States Capitol from the time he was evacuated from the

13   Senate Chamber until the session resumed.

14           Christopher Patrick Moynihan's participation in

15   the January 6, 2021, Capitol Riot.

16           On January 6, 2021, Moynihan was among the rioters

17   who broke through the security perimeter on the east side of

18   the Capitol Building.   Moynihan joined rioters confronting

19   police at the base of the steps on the east side.

20           I would draw the Court's attention to the photo

21   image that's included in the pleading with a circle

22   identifying Mr. Moynihan.

23           After rioters broke through the police line at the

24   base of the east steps, Moynihan climbed the steps and

25   joined the rioters gathered outside the Rotunda door.   While

1    there, Moynihan observed rioters attacking Capitol Police

2    officers attempting to defend the Rotunda door.

3            I would draw the Court's attention to the image

4    immediately below Paragraph 9 on Page 7.  Again, a box

5    identifies Mr. Moynihan.  And for the record, I would state

6    that these are screen captures taken from videos that have

7    been produced in discovery and are available.

8            At approximately 2:40 p.m., a group of rioters

9    succeeded in breaking through the police line and for a

10    period of time rioters entered the Capitol Building through

11    the Rotunda doors.  Moynihan was among the rioters who

12    managed to squeeze through the crowd and enter the building.

13            I would draw the Court's attention to the

14    screen capture highlighted with the box of the defendant,

15    Mr. Moynihan, pushing his way through the East Rotunda door.

16    Again, this is a screen capture taken from CCTV video, which

17    is available.

18            After entering the building, Moynihan climbed

19    stairs to the third floor as rioters shouted "Treason."

20    Moynihan then walked along the hallway on the third floor

21    shouting as he approached the Senate side of the Capitol

22    Building.

23            Again, I draw the Court's attention to the image

24    immediately below Paragraph 11 on Page 8 of Mr. Moynihan.

25    That is an image, I believe, taken from CCTV camera video.

1     At approximately 2:45 p.m., defendant briefly

2     entered the Senate gallery through a third-floor door.

3     Defendant then -- defendant left the gallery and walked down

4     to the second floor.

5     At approximately 2:49, Moynihan entered the Senate

6     Chamber through a door on the second floor.  Moynihan was

7     aware that he did not have authorization to enter the Senate

8     Chamber.  At one point, Moynihan paged through a notebook on

9     top of a senator's desk, taking out papers, and taking

10    pictures with his cell phone.  While looking at the papers,

11    Moynihan said, quote, There's gotta be something in here we

12    can fucking use against these scumbags.  Defendant is

13    depicted below in a screenshot taken from a *New Yorker*

14    magazine video taken on January 6, 2021, inside the Senate

15    Chamber.

16    I draw the Court's attention to the image, which

17    is a screen capture, immediately below Paragraph 13 on Page

18    9 of the pleading.

19    At approximately 3:04 p.m., Moynihan walked down

20    to the Senate well, where he stood adjacent to an elevated

21    desk and platform.  A few feet away, several other

22    individuals were shouting, praying, and commanding the

23    attention of others in the Senate Chamber.  One of those

24    individuals was shirtless, wearing face paint, and using a

25    bullhorn to speak.  Moynihan walked toward those individuals

1    and remained standing with them while they continued to

2    shout, cheer, and say prayers using the bullhorn.  Moynihan

3    is depicted below in a screenshot taken from a *New Yorker*

4    magazine video taken on January 6, 2021, inside the Senate

5    Chamber.

6            I draw the Court's attention to the image

7    immediately below Paragraph 14 on Page 9 and also note

8    parenthetically I think that is identical to a Senate floor

9    recording studio video depicting the exact time of that.

10           At approximately 3:08 p.m. law enforcement

11   officers cleared the Senate Chamber and Moynihan was

12   escorted out of the U.S. Capitol Building.

13           Moynihan willfully, knowingly -- willfully and

14   knowingly entered the U.S. Capitol Building and the Senate

15   Chamber knowing that he did not have permission or

16   authorization to do so.  Moynihan further admits that while

17   inside the Capitol he willfully and knowingly uttered loud,

18   threatening, and abusive language, or engaged in disorderly

19   or disruptive conduct with the intent to impede, disrupt, or

20   disturb the orderly conduct of a session of Congress.

21   Moynihan further admits that while inside the Capitol, he

22   willfully and knowingly paraded, demonstrated, or picketed.

23           Moynihan further admits that while inside the

24   Capitol, he corruptly obstructed, influenced, and impeded an

25   official proceeding; that is, a proceeding before Congress,

1    specifically Congress's certification of the Electoral

2    College vote as set out in the Twelfth Amendment of the

3    Constitution of the United States and 3 USC Sections 15

4    through 18.

5              Without waiving any arguments set forth in

6    Mr. Moynihan's motion to dismiss Count 1, the parties agree

7    that if the Court finds the existence of these facts beyond

8    a reasonable doubt, this evidence would establish each and

9    every element of the charged offenses in light of the

10   Court's ruling on the motion and without waiving defendant's

11   objection to the Court's ruling.

12             THE COURT:  Okay.  Thank you very much.

13             MR. PETERSON:  Thank you, Your Honor.

14             THE COURT:  Mr. Smock, Mr. Moynihan, please

15   approach.

16             Okay.  Mr. Moynihan, before I ask you whether you

17   agree to the facts that Mr. Peterson just read, I'm going to

18   ask you a few preliminary questions.  All right?

19             How old are you, sir?

20             THE DEFENDANT:  I'm 31, Your Honor.

21             THE COURT:  31.  Where did you grow up?

22             THE DEFENDANT:  I'm sorry, what was that, Your

23   Honor?

24             THE COURT:  Where did you grow up?

25             THE DEFENDANT:  I can't hear you.  I'm sorry.

```
1                  THE COURT:  Where did you grow up?
2                  THE DEFENDANT:  Oh, Poughkeepsie, New York, Your
3      Honor.
4                  THE COURT:  Okay. Did you go to school?
5                  THE DEFENDANT:  Yes, I did, Your Honor.
6                  THE COURT:  How far did you get?
7                  THE DEFENDANT:  I went to 11th grade and received
8      a GED.
9                  THE COURT:  Okay.  So you can read and write?
10                 THE DEFENDANT:  Yes, I can, Your Honor.
11                 THE COURT:  Are you a U.S. citizen?
12                 THE DEFENDANT:  I am, Your Honor.
13                 THE COURT:  Have you taken any drugs or alcohol in
14     the last 48 hours that would inhibit your ability to
15     concentrate this afternoon or to understand anything about
16     what's going on in the courtroom?
17                 THE DEFENDANT:  Not at all, Your Honor.
18                 THE COURT:  Same question with respect to
19     medications, either prescription drugs or over-the-counter
20     drugs.  Anything at all that you may have taken over the
21     last 48 hours to impair your ability to concentrate or
22     understand?
23                 THE DEFENDANT:  No, Your Honor.
24                 THE COURT:  Okay.  Counsel, any competency
25     concerns?
```

1          MR. PETERSON:  No issues by the United States,

2     Your Honor.

3          MR. SMOCK:  No, Your Honor.

4          THE COURT:  Okay.  Mr. Moynihan, the Court, based

5     on the answers that you have provided and hearing no

6     objections or concerns from counsel, I find that you are

7     fully competent and capable of both knowingly agreeing to

8     the stipulated facts that Mr. Peterson just recited as well

9     as entering an informed guilty plea to the remaining counts.

10          So with that, you heard Mr. Peterson read the

11     facts that you have agreed to.  Did he get anything wrong?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Anything inaccurate about what he

14     read?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  And I believe he was reading from a

17     document called "Statement of Facts for Stipulated Trial."

18     It's a 12-page document, and it appears to bear your

19     signature on the final page.

20          THE DEFENDANT:  That is my signature, Your Honor.

21          THE COURT:  Okay.  And you signed it after

22     reviewing it and discussing it with Mr. Smock?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.

25          All right.  Based on the statement of undisputed

1    stipulated facts as well as Mr. Moynihan's answers, the

2    Court accepts and adopts the stipulated facts.  I'm

3    satisfied that those facts, as now found, are sufficient

4    to satisfy each element of the offense charged in Count 1

5    of the indictment, which is a violation of 18 USC

6    1512(c)(2), beyond a reasonable doubt.  The Court therefore

7    finds Mr. Moynihan guilty of Count 1 in the indictment and

8    directs the clerk to enter the conviction.

9            All right.  So let's proceed to the plea unless

10   anyone has any comments or questions.

11           All right.  Mr. Moynihan, you've been able to

12   discuss your decision to plead guilty with Mr. Smock?

13           THE DEFENDANT:  I have, Your Honor.

14           THE COURT:  Have you been satisfied with his

15   services in the case thus far?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  All right.  As I'm sure he explained

18   to you, by pleading guilty and not proceeding before a

19   jury -- and some of the misdemeanors are Class A so there

20   would have been a jury trial right.  You're giving up an

21   important right to appear before a jury, to have 12 jurors

22   decide your fate, to be represented by counsel, to have your

23   counsel cross-examine the government's witnesses, to call

24   witnesses on your own behalf.

25           Had you chosen to proceed, you would have been

1    able to testify on your own behalf, had you so chosen, but

2    by pleading guilty you would be giving up those jury trial

3    rights.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Okay.  There are also a number of

6    civil rights that you may be giving up.

7              All of the remaining charges are misdemeanors; is

8    that correct?

9              MR. SMOCK:  That's correct.

10              THE COURT:  There may not be any federal civil

11    rights, but I don't -- I can't tell you whether in some

12    municipality or county or state that you may reside in there

13    aren't some implications from pleading guilty even to a

14    federal misdemeanor charge, so things like the right to

15    vote, the right to hold office, the right to serve on a

16    jury, the right to own a firearm.  I think even federally,

17    while you are still on supervision for this crime, you would

18    be barred from owning a firearm, and you would be giving up

19    potentially those civil rights by pleading guilty.  Do you

20    understand that?

21              THE DEFENDANT:  I do, Your Honor.

22              THE COURT:  And you're still willing to proceed?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  Okay.  You can have a seat.

25              Mr. Peterson, do you want to put the elements of

1    the remaining charges on the record?  And I take it the

2    factual basis is the same for these as for Count 1.

3                MR. PETERSON:  Yes, Your Honor, they are.

4                THE COURT:  All right.

5                MR. PETERSON:  May it please the Court.  For

6    purposes of the record, Count 2.  The essential elements of

7    the offense of entering and remaining in a restricted

8    building or grounds in violation of Title 18 United States

9    Code Section 1752(a)(1), each of which the government must

10   prove beyond a reasonable doubt, are:

11               One, the defendant entered and remained in a

12   restricted building or grounds without lawful authority to

13   do so;

14               And, two, the defendant did so knowingly.

15               Count 3.  The essential elements of the offense of

16   disorderly or disruptive conduct in a restricted building or

17   grounds, in violation of Title 18 United States Code Section

18   1752(a)(2), each of which the government must prove beyond a

19   reasonable doubt, are:

20               The defendant engaged in disorderly or disruptive

21   conduct in, or in proximity to, any restricted building or

22   grounds; the defendant did so knowingly and with the intent

23   to impede or disrupt the orderly conduct of government

24   business or official functions; and the defendant's conduct

25   occurred when, or so that, his conduct in fact impeded or

1    disrupted the orderly conduct of government business or

2    official functions.

3            Count 4.  The essential elements of the offense of

4    entering and remaining on the floor of the Congress in

5    violation of 40 United States Code Section 5104(e)(2)(A),

6    each of which the government must prove beyond a reasonable

7    doubt, are:

8            One, the defendant entered and remained on the

9    floor of either house of Congress without authorization;

10            Two, the defendant acted willfully and knowingly.

11            Count 5.  The essential elements of the offense of

12    disorderly or disruptive conduct in the Capitol Building or

13    grounds in violation of Title 40 United States Code Section

14    5104(e)(2)(D), each of which the government must prove

15    beyond a reasonable doubt, are:

16            The defendant engaged in disorderly or disruptive

17    conduct in any United States Capitol Buildings;

18            Two, the defendant did so with the intent to

19    impede, disrupt, or disturb the orderly conduct of a session

20    of Congress or either house of Congress; and

21            Three, the defendant acted willfully and

22    knowingly.

23            Count 6.  The essential element of the offense of

24    parading, demonstrating, or picketing in a Capitol Building

25    in violation of Title 40 United States Code Section

1    5104(e)(2)(G), each of which the government must prove

2    beyond a reasonable doubt, are:

3              The defendant paraded, demonstrated, or picketed

4    in any of the United States Capitol Buildings;

5              Two, the defendant acted willfully and knowingly.

6              THE COURT:  Very well.

7              Okay --

8              MR. PETERSON:  May it please the Court, if I can

9    approach the court reporter?  I do have actually a copy of

10   this, and it may be of assistance.

11             THE COURT:  Thank you.

12             MR. PETERSON:  Thank you, Your Honor.

13             THE COURT:  She's pretty good.  I don't know.

14             All right.  So, Mr. Smock, I would ordinarily --

15   first of all, Mr. Moynihan, same question that I asked you

16   with respect to Count 1.  Do you understand, as Mr. Peterson

17   just described, the elements of each of the offenses from

18   Count 2 to Count 6; in other words, what the government

19   would have to prove had this case gone to trial?

20             THE DEFENDANT:  I do, Your Honor.

21             THE COURT:  Mr. Smock, I would ordinarily have you

22   put the terms of the plea agreement on the record, but

23   there's no plea agreement.  What I would suggest, however,

24   is that if there have been any guidelines estimations -- I

25   don't know if Mr. Moynihan has any criminal history or

1    whether you have advised him on what the potential sentence

2    he might face by pleading guilty to these counts is?

3              MR. SMOCK:  So, Your Honor, I talked to

4    Mr. Moynihan about the maximum possible penalties for these

5    misdemeanors, which is one year with respect to Class A

6    misdemeanors; no more than six months with respect to Class

7    B misdemeanors.  The guidelines issue really hinges upon the

8    felony charge that there's a plea to.  I mean, I'm sorry,

9    that there was a stipulated facts bench trial to.

10             He and I have discussed his criminal history.

11   We've discussed the guidelines.  I think -- I don't know the

12   extent to which the Court wants me to get into that with

13   respect to the misdemeanors, which I think the guidelines

14   probably wouldn't come into play.

15             THE COURT:  Okay.  If it's a Class A, the

16   guidelines do come into play.  It's generally zero to six

17   months, if there's no criminal history.  I don't know what

18   your criminal history is.

19             But the Court, at least on the misdemeanors, could

20   sentence you up to the statutory maximum on each of those.

21   In theory, the Court could run each of those consecutively

22   because the government has not agreed to dismiss any of

23   those misdemeanor counts.  In addition, I don't have,

24   sitting here today, a calculation of what the felony

25   conviction guideline is, but that could substantially

1    increase your exposure given the plea to the misdemeanors as

2    well.

3              Do you understand all that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And anything you'd like to ask

6    Mr. Smock about or to ask me about before we proceed?

7              THE DEFENDANT:  No, Your Honor.

8              THE COURT:  Okay.  And you're willing to go

9    forward?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Okay.  So the way that sentencing in

12   this case will work is the probation office will assign

13   someone to prepare a comprehensive report called a

14   presentence report.  It will go over the circumstances of

15   this offense but also provide me a lot of background on your

16   history, about your educational history, your work history,

17   you know, any medical history you may have, any criminal

18   history that you may have.

19             They will seek to interview you.  They may seek to

20   interview your family members.  It will talk about your

21   financial circumstances.  And I will take all of that into

22   account in fashioning an appropriate sentence in this case.

23             Mr. Smock will get a draft of that report, as will

24   the government.  You'll be able to comment on it.  Each side

25   will submit memos to me recommending a sentence that is

1    appropriate from their perspective, and I will take all of

2    that into account and fashion what I view as a proper

3    sentence in this case.  Okay?

4              Count 1 or the basis for Count 1 is currently on

5    appeal.  I don't know how that will end up so when we come

6    back for sentencing we may be here on all six counts or we

7    may be here just on the five misdemeanors.

8              Is that fair, Mr. Smock?

9              MR. SMOCK:  Yes, thank you.

10             THE COURT:  Okay.  A few more questions,

11   Mr. Moynihan.

12             Anyone forcing you to plead guilty today?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  Anyone made any promises to you?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  Anyone made any promises about what

17   sentence I will impose in this case?

18             THE DEFENDANT:  No, Your Honor.

19             THE COURT:  Are you pleading guilty voluntarily

20   and of your own free will?

21             THE DEFENDANT:  Yes, I am, Your Honor.

22             THE COURT:  And, again, is there anything you'd

23   like to ask me about or ask Mr. Smock about?

24             THE DEFENDANT:  Not at all, Your Honor.

25             THE COURT:  Okay.  So what is your plea on Counts

1    2 through 6?

2              THE DEFENDANT:  I plead guilty.

3              THE COURT:  All right.  The Court is satisfied

4    that Mr. Moynihan is fully competent and capable of making a

5    decision today, that he understands the nature of the

6    charges and the consequences of his plea, that the plea of

7    guilty is knowing and voluntary, that he is acting of his

8    own free will, and that there is an adequate factual basis

9    containing each of the essential elements of the offenses

10   for his plea; therefore, the guilty plea is entered and the

11   defendant is now adjudged guilty of the offenses set forth

12   in Counts 2 through 6 of the indictment.

13             Mr. Moynihan, because that presentence report is

14   the main thing I'll use for sentencing, it's important that

15   you'll cooperate with the probation office.  As thorough and

16   accurate a picture of you I get, the better.  All right?

17             Also, you will remain on your conditions of

18   release so I would expect that you will continue to comply

19   with them.  All right?

20             Mr. Smock, anything else?

21             MR. SMOCK:  No, I think maybe just setting a

22   sentencing date.

23             THE COURT:  Yes, so we need to set a sentencing

24   date.  It usually takes probably two to two and a half

25   months for probation to complete their process, so we've

```
1    been setting sentences at least three months out, or at

2    least I have, in my January 6th cases.

3              MR. PETERSON:  I apologize for interrupting.

4              THE COURT:  No.

5              MR. PETERSON:  I'm assisting Mr. Juman.  Mr. Juman

6    and I, I think, are jointly responsible.  I've entered my

7    appearance.  I'm happy to do that.  I think he anticipated

8    and would hope to come up and actually do the sentencing,

9    and he's coming up on December 8th.

10             I will just throw that date out.  I don't know if

11   Your Honor's available.  I don't know if counsel is

12   available for that.

13             THE COURT:  I think that's a little premature

14   given the probation office's schedule.  I try to be as

15   accommodating as possible.

16             MR. PETERSON:  I apologize for that.

17             THE COURT:  No, no, I have December 20th at 10:00

18   a.m.  And we can set it, and if that's not convenient for

19   Mr. Juman, he can file a motion.  I'll be happy to work with

20   him.

21             MR. PETERSON:  Thank you, Your Honor.

22             THE COURT:  Mr. Smock, December 20th at 10:00

23   a.m.?

24             MR. SMOCK:  Yes, that works for the defense.

25             THE COURT:  All right.  The Court will set
```

1    sentencing in this matter from Tuesday, December 20th at

2    10:00 a.m.

3            I know there were a number of moving parts today.

4    Did we get everything?

5            MR. PETERSON:  I believe we did, Your Honor.

6            THE COURT:  Right.

7            Mr. Smock?

8            MR. SMOCK:  Yes.  Thank you.  I appreciate it,

9    Your Honor.

10           THE COURT:  Okay.  All right.  So, Mr. Peterson,

11   you're from Main Justice?

12           MR. PETERSON:  That's a misnomer.  I am from the

13   criminal division.  My office is not physically located at

14   Main Justice.  I'm a detailee from the Department of

15   Justice.

16           THE COURT:  Got it.  Which section are you in?

17           MR. PETERSON:  Actually there's some small irony,

18   the capital case section, capital with an A so...

19           THE COURT:  All right.  Well, thanks for helping

20   us out.

21           MR. PETERSON:  Thank you, Your Honor.

22           THE COURT:  All right.  Mr. Moynihan, safe

23   travels.

24           THE DEFENDANT:  Thank you, Your Honor.

25                (Whereupon the hearing was

1                    concluded at 2:31 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    <u>**CERTIFICATE OF OFFICIAL COURT REPORTER**</u>

2

3              I, LISA A. MOREIRA, RDR, CRR, do hereby

4    certify that the above and foregoing constitutes a true and

5    accurate transcript of my stenographic notes and is a full,

6    true and complete transcript of the proceedings to the best

7    of my ability.

8        Dated this 7th day of April, 2023.

9

10                              <u>/s/Lisa A. Moreira, RDR, CRR</u>
                                Official Court Reporter
11                              United States Courthouse
                                Room 6718
12                              333 Constitution Avenue, NW
13                              Washington, DC 20001

14

15

16

17

18

19

20

21

22

23

24

25